UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Allstate Insurance Company, Allstate Property and Casualty Company, and Allstate Indemnity Company,<br><br>Plaintiffs,<br><br>v.<br><br>Huy Ngoc Nguyen, D.C.; Healthcare Chiropractic Clinic, Inc.; Northwest MRI Center, Inc.; and Accident Recovery Chiropractic, P.A.;<br><br>Defendants. | Civ. No. 17-223 (PAM/BRT)<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiffs' Amended Motion for Summary Judgment (Docket No. 196) and Defendants' Motion for Judgment on the Pleadings. (Docket No. 198.) For the following reasons, Plaintiffs' Motion is granted and Defendants' Motion is denied as moot.

**BACKGROUND**

Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Indemnity Company (collectively, "Allstate") brought this lawsuit against Defendant Huy Ngoc Nguyen, D.C., his ex-wife Mimi Doan, and Nguyen's clinic, Defendant Healthcare Chiropractic Clinic, Inc. ("the clinic"), later called Defendant Accident Recovery Chiropractic, P.A., and a diagnostic-imaging center that Nguyen also owned, Defendant Northwest MRI Center, Inc., later called Midwest MRI Center, Inc. In July 2020, the Court issued an order on the parties' stipulation, dismissing all claims

against Doan and Midwest MRI Center. (Docket No. 144.) The only claims remaining are Allstate's claims against Nguyen, the clinic entities, and Northwest MRI Center.

Allstate's claims arise out of a fraudulent scheme to solicit car-accident victims to receive treatment at Nguyen's chiropractic clinic, thereby eliciting payments from insurance companies. Under the Minnesota No-Fault Act, insurance companies are required to provide a minimum of $20,000 in medical expense benefits for each automobile insurance policy sold in the state. Minn. Stat. §§ 65B.41-71. Therefore, Defendants would bill the patients' no-fault insurance companies for the treatment and care. Defendants collected additional payouts from insurance companies because Nguyen referred patients to his diagnostic-imaging center.

The evidence establishes that Nguyen's employees grew concerned about the care, or lack thereof, that patients received at his facilities. As an initial matter, Nguyen treated between 40 and 100 patients per day. (Keys Dep. (Stempel Decl. (Docket No. 193) Ex. A) at 20; De La Torre Dep. (Stempel Decl. Ex. B) at 30.) Due to the large volume of patients, treatments were often rushed or incomplete. (De La Torre Dep. at 35, 36-37.) For example, Nguyen incorporated massage into a patient's treatment plan; however, in order to see the large number of patients, Nguyen or Doan would prematurely cut off massages after five to ten minutes. (Id. at 43; Keys Dep. at 21-22.) Not only did Nguyen expedite treatments, but Nguyen and Doan sometimes instructed patients to sign for treatments that they did not receive. (De La Torre Dep. at 55-56; Nunez Dep. (Stempel Decl. Ex. C) at 62-64.) Nguyen also asked Tania Nunez, a chiropractic assistant, to sign for such unreceived treatments. (Nunez Dep. at 8-9, 63-64.)

Allstate also demonstrated that Defendants' billing practices were suspect. Nguyen did not provide Narate Keys, a massage therapist, or Lia De La Torre, a chiropractic assistant and massage therapist, instructions on current-procedural-terminology codes for billing insurance companies, although they were tasked with doing so. (De La Torre Dep. at 11, 45; Keys Dep. at 9-10, 22.) Nguyen and his employees billed insurance companies as if the appropriate provider had performed procedures, although that was not always the case. For instance, Keys observed one of Nguyen's employees who had no medical training take a patient's x-rays. (Keys Dep. at 11, 13, 17.)

To ensure that insurance companies would pay patients' claims, Nguyen and Doan coached patients before they underwent independent medical examinations or under-oath examinations. (Nunez Dep. at 41-43; De La Torre Dep. at 82-83.) Likewise, Nguyen and Doan instructed patients to tell their insurers that they exercised at the clinic, despite that no patient did so. (Nunez Dep. at 43.) Nguyen and Doan further instructed Nunez, who speaks Spanish and sometimes translated for Spanish-speaking patients, to tell patients that their treatment took longer than it did, so that the clinic could bill the insurance company for additional time. (Id. at 42-43.)

Defendants fueled this scheme by paying employees, runners, drivers, and a tow-truck company for new patient referrals and to bring patients to the clinics. (De La Torre Dep. at 39; Sent. Hr'g Tr. (Stempel Decl. Ex. N) at 16.) Defendants used so-called "runners" to bring new patients to the clinic, and paid them between $600 to $1,600 per referral. (Sent. Hr'g Tr. at 21-22.) Nguyen and Doan offered Nunez a $200 bonus for each new-patient referral. (Nunez Dep. at 16-17.) To receive this referral bonus, Nunez called

automobile-accident victims to solicit them to treat at the clinic. Nearly every day, Nguyen's father would purchase police reports and Doan would instruct employees on which accident victims to call, using a pre-paid cellphone that Defendants provided. (De La Torre Dep. at 13-14, 16; Nunez Dep. at 12-13.) Defendants focused on attracting minority patients to the clinic. (Nunez Dep. at 21-23.) Specifically, Nguyen told Nunez to call "African American, Hispanic, Hmong, this and that, . . . [not] white people" because they "know the state law" and could cause problems for him. (Call Tr. (Stempel Decl. Ex. J) at 14.)

To encourage patients to treat with the clinic, Nguyen would tell them that their personal-injury case could be worth $100,000, and that they should continue to frequently treat at the clinic to increase their case's potential value. Similarly, Nguyen instructed De La Torre to call personal-injury attorneys if a patient could "build a case." (De La Torre Dep. at 23-24.) Nguyen also paid patients in gift cards or up to $1,000 cash to receive treatment at the clinic. (Nunez Dep. at 60, 105.)

Ultimately, Nunez recorded a conversation with Nguyen, during which she expressed concern about the clinic's method of soliciting patients and paying referrals. (See Call Tr.) Nguyen reassured her that it was all right to continue calling accident victims "as long as they don't know it's us." (Id. at 6.) He instructed her to use a fake name and a pre-paid cellphone that was "harder to trace" and to not identify the clinic when making solicitation calls. (Id. at 6-7.) Nguyen acknowledged that making these phone calls was illegal. (Id. at 6.)

Troublingly, Nguyen continued his illegal conduct even after the FBI executed search warrants at his facilities in 2015.  (Sent. Hr'g Tr. at 21.)  After the searches, Nguyen changed the names of his clinic and diagnostic-imaging center from Healthcare Chiropractic to Accident Recovery Chiropractic and from Northwest MRI Center to Midwest MRI Center, respectively.

In 2018, Nguyen, Doan, and one of their business associates pleaded guilty to wire fraud.  (Stempel Decl. Exs. M-P, R.)  Nguyen agreed to pay restitution (id. Exs. M-N), but has failed to do so.  Allstate's civil claims were stayed until April 2018, while the underlying criminal matter proceeded.  (Docket Nos. 33, 38, 42, 44.)

The seven-count Complaint raises claims for civil racketeering and conspiracy, common-law fraud, no-fault fraud, unjust enrichment, and disgorgement, and seeks declaratory relief.  (See Docket No. 1.)  Allstate seeks recovery of the $832,950 it paid to the Defendant entities since January 1, 2010, to treat patients that Allstate insured.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party."  Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set

forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. Paine v. Jefferson Nat'l Life Ins. Co., 594 F.3d 989, 992 (8th Cir. 2010).

Allstate moves for summary judgment as to all counts. Defendants attempt to create a dispute of material fact by attaching the transcript of Nguyen's deposition taken while he was in prison, during which he erroneously invoked his Fifth Amendment right against self-incrimination. Defendants contend that because Nguyen's post-conviction testimony conflicts with other facts in the record, summary judgment is inappropriate. However, Defendants fail to point out a single fact in dispute, simply making a broad-sweeping, bald assertion. Regardless, Nguyen has repeatedly admitted to the conduct described in the Complaint—at his guilty plea, at the proceeding revoking his chiropractic license, and at his sentencing hearing.

Nguyen's argument that his own self-serving postconviction testimony creates a genuine dispute of material fact is unavailing. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) ("[A] properly supported motion for summary judgment is not defeated by self-serving [testimony].). Moreover, as Allstate asserts, the doctrine of judicial estoppel prohibits Nguyen from arguing a different position here than he argued in the related criminal matter. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.") (quoting 18 Moore's Fed. Prac. § 134.30, p. 134-62 (3d ed. 2000)). Allstate's Motion for summary

judgment is granted. Therefore, Defendants' Motion for Judgment on the Pleadings is moot.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiffs' Amended Motion for Summary Judgment (Docket No. 196) is **GRANTED**; and

2. Defendants' Motion for Judgment on the Pleadings (Docket No. 198) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  Wednesday, December 29, 2021

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge